McClanahan v. Litton.

---

## THOMAS McCLANAHAN v. SOLOMON LITTON.

### In Chancery.

This was an appeal from a decree of the Paris district court.

The suit had been brought in the supreme court of the district of Kentucky, and removed on the erection of the district into the State of Kentucky, to the court of appeals for trial, but not having been tried when the original jurisdiction of the court of appeals was taken away, it was again removed to the said district court.

Solomon Litton, who was complainant in the inferior court, on the 15th day of January, in the year 1780, obtained from the commissioners the following certificate for a pre-emption of 400 acres of land, to-wit:

"Solomon Litton this day claimed a pre-emption of 400 acres of land at the state price, in the district of Kentucky, lying on the

22

Middle fork of Cooper's run above Frances Berry's claim to lands, by making an actual settlement in the month of March, 1779. Satisfactory proof being made to the court, they are of opinion that the said Litton has a right to a pre-emption of 400 acres of land to include the above location, and that a certificate issue accordingly."

But before he could obtain a pre-emption warrant, he was taken prisoner by the British and Indians at Martin's station on the 26th day of June, 1780, and detained in captivity until some time in the year 1784.

John Martin, on the 13th day of January, in the year 1783, entered the said complainant's pre-emption warrant with the county surveyor, in the following words, to-wit:

" Solomon Litton enters 400 acres on a pre-emption warrant, No. 622, lying on the Middle fork of Cooper's run, about a mile and a half up said fork, and running up both sides of the fork for complement, including two springs, one in said creek, and the other on the east side of the same."

And the said Solomon Litton was prevented from surveying the same, by the defendant, Thomas McClanahan.

The appellant claimed as in the former suit under the settlement and pre-emption of Daniel Wilcoxson, the pre-emption of Kellar, and his treasury warrant of 2,230 acres.

The complainant alleeged in his bill, he did make an actual settlement at the place claimed by him in March, 1779, and prayed for a conveyance.

The defendant McClanahan, did not deny the making the actual settlement, but contended that the place claimed was not the one called for by the certificate and entry.

The annexed connected plat, No. 37, was returned in this cause, of which the following is an explanation:

McClanahan v. Litton.

The W's, McClanahan's settlement and pre-emption as assignee of Wilcoxson. W W M M, Thomas McClanahan's 300 acres on military warrant. The M's, Thomas McClanahan's 2,230 acres on treasury warrant. The L's, the complainant's pre-emption according to his certificate. The L's, do., according to entry as directed by the district court. The square figure with dotted lines Thomas Whitledge's settlement. The parallelogram with dotted lines Kellar's pre-emption. 1, John Verdiman's dwelling house. 2, a spring on the east side of the creek. 3, a spring on the edge of the creek; said by Thomas McClanahan to be Solomon Litton's spring. 4, a sugar tree claimed by Francis Berry as the place where he improved. 5, Strother's spring, shown by Francis Berry as the place where Solomon Litton improved. 6, Strother's dwelling house. 7, a sink hole spring. 8, McGee's spring. 9,

Grotz' spring. 10 to 11, the East fork of Cooper's run. 12, the head of the Middle fork of Cooper's run. 13, the head of the North or West fork of Cooper's run.

The following is a summary of the testimony produced in this cause :

Francis Berry deposed, that some time in the month of May, in the year 1779, he and a number of others were living at Isaac Riddle's station, and he went from thence in company with John Haggin, Richard Davis, and the complainant, Solomon Litton, with several others, with an intention of making improvements.

That they struck a branch no great way from the mouth of it, which branch John Haggin then called the Middle fork of Cooper's run, and after having proceeded half a mile up the said branch this deponent made an improvement for himself.

That they then proceeded about half a mile farther up the said branch, and came to the place on the left hand of the branch, as they were going up the same, where there were two springs about four or five poles asunder, where the complainant, Solomon Litton, marked the two first letters of his name on a tree, which, as well as this deponent recollects, was an ash tree ; that this tree stood within half a pole of that spring, which rose farthest from the branch of the two springs above mentioned, which spring is about four or five poles from the house in which Thomas Strother now lives.

That when the complainant, Litton, made the said improvement, he declared he did it with a view of obtaining land there, and that he intended removing his family to that place ; that the complainant, Litton, removed his family to this country in the fall, 1779, and carried them first to Riddle's station ; that he afterward removed to Martin's station, with a view of making corn there the next year ; that it was nearer to his improvement on the land in dispute than Riddle's station, and that the said complainant, Litton, was taken prisoner at Martin's station, in June, 1780.

That he has always, from the time of making said improvement by the complainant, Litton, as aforesaid, heard him claim the same as his, and declare that he intended to lay his claim upon it ; and after he had obtained his certificate, heard him say that that was the place for which it was granted, and he is well assured that the complainant, Litton, removed to Martin's station that he might be more convenient to the said improvement ; and that he doth not know or believe that the complainant, Litton, ever claimed any

other land, by virtue of any improvement made in this country, but the land in dispute.

That he was not in any way interested in the event of this suit; he can be neither gainer or loser by it, let it be decided in any manner whatever.

John Martin deposed, that he had been acquainted with Cooper's run, which empties into Stoner's fork of Licking, from the year 1775 till that time; that he has always heard the most noted branch of that run called by the name of the South fork, the Middle fork, and the West fork; that that which was known by the name of the Middle fork is that branch on which the defendant, Strother, now lives; that that branch obtained the name of the Middle fork until its junction with the West fork, and below that junction it was known by the name of Cooper's run.

That he hath never, from the year 1775 until some time in the present year, and then only from the defendant, McClanahan, heard the said branches of Cooper's run called by any other names than those mentioned above.

That he was present when the complainant laid in his claim before the commissioners, and understood it was intended to lie on what he now calls the Middle fork, and that he also made the entry of the said complainant with the surveyor, and that he intended by the said location to locate the said land on the Middle fork, on which the defendant, Strother, now lives, and called to adjoin Berry, which call he inserted from an inspection of the commissioners' books, and his own knowledge of the claims, although Litton's entry with the surveyor was made before Berry's.

Peter Verdiman deposed, that he knew nothing of Solomon Litton's claim further than his entry, but that he is well acquainted with the Middle fork of Cooper's run; that in the year 1784, he purchased a claim of Thomas Whitledge, where he now lives, about one mile and three-quarters up the said Middle fork from its mouth, where it mouths with the east branch, and at the springs, where this deponent now lives, there was and is sign of settlement by blazes on trees near two springs, one rising up within the banks of the said creek, the other to the east and on the east side, running into said creek about one mile and three-quarters from its mouth, and about one mile and a half below Thomas Strother's, which said spring seems to answer the description of a location made by one Solomon Litton with the surveyor

of Fayette, and that he never saw any sign of settlement by any mark of chops whatever any higher up the said Middle fork than those already mentioned, and that if Solomon Litton makes his survey higher up than those springs already mentioned, in his opinion it will be contrary to his location.

John Haggin deposed as in the suit in which Francis Berry was complainant, except as follows, to-wit:

That he was present when the complainant put in his claim before the commissioners, and understood that he meant to lay it on that branch of Cooper's run, which he had shown him for the Middle fork, and to adjoin Francis Berry, being on that branch on which Thomas Strother lived.

That he had shown that fork to the complainant to improve on, and understood that he did improve there, and that Francis Berry was with him when he made the improvement.

Peter Moore deposed, that in the year 1785 this deponent was with Thomas McClanahan, Jr., when he settled at the spring near Thomas Strother's, in the field which Richard Davis in his deposition saith that Solomon Litton blazed an ash tree, and set the two first letters of his name in the blaze with powder in the year 1779.

That when Thomas McClanahan, Jr., settled at the said spring, in the year 1785, that there was not any blaze on any tree at the said spring, nor any sign of any tree being cut down; therefore, it appeared to him that there was not any truth in this part of Richard Davis' testimony.

Samuel Tharp deposed, that in the year 1785, he was with Thomas McClanahan, Jr., when he settled at the spring in the field near Thomas Strother's house, where Richard Davis, by his deposition swore that Solomon Litton blazed an ash tree, and set the two first letters of his name in the blaze with powder, in the year 1779.

That when Thomas McClanahan, Jr., settled at the said spring, in the year 1785, that there was not any blaze on any tree at the the said spring, nor any sign of any tree being cut down; therefore it appeared to him that Richard Davis' testimony could not be true.

Thomas McClanahan, Jr., deposed, that in the year 1785, when he settled at the spring in the field near Thomas Strother's house, where Richard Davis swore that Solomon Litton blazed an ash tree, and set the two first letters of his name in the blaze with powder, in the year 1779, there was not any tree blazed at the

said spring, nor the sign of any tree being cut down, therefore it was his opinion that Richard Davis' testimony could not be the truth. And that he was not interested in his father's suit with Litton.

The other depositions were the same as in the suit preceding this.

At the March term, in the year 1798, this cause was argued in the district court, and the following decree was pronounced:

By THE COURT.—In this cause it has been strongly contended, that the proof adduced to substantiate the claim of the complainant varies essentially from the proof required by law, as the ground on which the court of commissioners proceeded to grant certificates of pre-emption. In answer to which the court embraces this early opportunity to declare that they will repel every effort to destroy the efficacy of those certificates granted by the commissioners. They are of opinion that it is too late to investigate the grounds on which the commissioners proceeded, and conceive that a certificate granted by the commissioners is conclusive evidence of title; and that although a variance may appear in identifying the spot designated by the certificate, if the identity is established no injury shall accrue to the party.

The court is of opinion that the testimony exhibited by the complainant in this cause sufficiently establishes the spot designated by him in his certificate of pre-emption.

But the complainant in his entry with the surveyor has made such a variance from the certificate as will justify this court in decreeing that his survey shall be made in manner following: His pre-emption must be first laid down in a square, with lines running to the cardinal points, and including the spring near Strother's house in the center of his survey, conformably to his entry with the commissioners.

The complainant shall then lay down the survey of his pre-emption, commencing with a line at right angles from and across the general course of the Middle fork of Cooper's run, so as to include the aforesaid spring one pole within the survey; thence extending the body of the survey up such Middle fork in a square, so as to include therein equal quantities of land on each side of the said Middle fork. Having thus laid down the surveys agreeably to the different entries with the commissioners and surveyor, such part of the complainant's pre-emption as will be covered by both the above surveys, and within the survey of the defendant,

McClanahan *v.* Litton.

shall be conveyed by the defendant to the complainant. Order of survey, etc.

And at the July term of the said court the said decree was made final; from which decree the defendant appealed, and the cause having been argued in the court of appeals at this term, the following decree was pronounced:

BY THE COURT.—In this cause it appears that the appellant relies solely on his legal titles, and the appellee on his locations with the commissioners and surveyor, which are of prior dates to the titles of the appellant; therefore that the investigation of the court may be confined to those locations, as the appellee was complainant in the original suit, and as it appears that the location of the appellee with the commissioners is materially different from that of the surveyor, it seems by the land law he is authorized to rely on his last choice,"and is thereby restricted to it; and that his location with the surveyor can not be aided by his location with the commissioners, farther than they agree with each other. And it may be added that in this case the restriction might have been advantageous to him, but can not be injurious, inasmuch as the court is decidedly of opinion that the place of the actual settlement called for in his location with the commissioners (to say nothing of its want of notoriety) has not been satisfactorily identified.

In his location with the surveyor (the Middle fork of Cooper's run having been called for) the expressions "including two springs, one in the said creek, and the other on the east side of the same," is evidently the leading or principal call therein; it being the one which is not only the most certain and definite, from the nature and situation of the objects it specifies, but also the call which from any rational construction of the location must govern all its other calls, so as to ascertain the exact situation and form of the land.

These springs not having been shown by the appellee, the court is of opinion that his claim to any of the lands of the appellant can not be sustained. And that his pre-emption, for which he obtained a certificate from the commissioners, and paid the price thereof to the commonwealth, is unluckily lost by the mismanagement of himself and his agents.

Wherefore it is decreed and ordered, that the decree of the court for the said district in the said cause rendered, be reversed and held for naught; and that the said appellee pay unto the said

McClanahan (appellant) his costs in this court expended. And it is further decreed and ordered that the original suit of the appellee in the said district court be dismissed by the same, with costs, etc.